Leemore Kushner (SBN 221969)
KUSHNER LAW GROUP
801 North Citrus Avenue
Los Angeles, California 90038
Telephone:  (323) 515-7894
Facsimile:  (323) 544-8170
Email: lkushner@kushnerlawgroup.com

Attorneys for Plaintiff Malibu Media, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOES 1 through 13,<br><br>Defendants. | Case No. 2:12-cv-01260-MCE-JFM<br><br>**PLAINTIFF'S OPPOSITION TO DOE 8'S OMNIBUS MOTION FOR A PROTECTIVE ORDER, MOTION TO SEVER AND MOTION FOR RECONSIDERATION**<br><br>Date:  September 27, 2012<br>Time: 11:00 a.m.<br>Place: Ctrm 26 |

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3   I.   INTRODUCTORY STATEMENT……………………..…………………………1

4   II.  JOINDER IS PROPER…………………..……………..……………………….4

5   III. THE COURT SHOULD NOT ISSUE A PROTECTIVE ORDER………………..5

6        A. The Subpoena Is Not Designed to Embarrass ……………………………5

7        B. The Subpoena Does Not Subject Defendant to Undue Burden…………..6

8   IV. THE COURT SHOULD NOT VACATE ITS ORDER ALLOWING EARLY
9       DISCOVERY……………………………………………….……………...7

10       A. Plaintiff Established Good Cause for Early Discovery …………………..7

11       B. The Subpoena Seeks Information That Is Reasonably Calculated to Lead
12          to the Discovery of Admissible Evidence………………………………10

13   V.  CONCLUSION………………………………………..………………………11
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

5 *Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577,*
736 F.Supp.2d 212, 215 (D.D.C. 2010) ........................................................................9

6

7 *AF Holdings, LLC v. Does 1-62*
2012 WL 488217 at *1 (S.D.Fla. Feb. 14, 2012) ......................................................11

8

9 *Charter Communications, Inc., Subpoena Enforcement Matter,*
393 F.3d 771, 775 n. 3 (8th Cir. 2005) ........................................................................4

10

11 *Doe v. S.E.C.*
2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) ......................................................9

12

13 *Donkeyball Movie, LLC v. Does*
2011 WL 1807452 (D.D.C. May 12, 2011) .................................................................7

14

15 *First Time Videos, LLC v. Does 1-18,*
2011 WL 4079177 at *1 (S.D.Ind. Sept. 13, 2011) ....................................................7

16

17 *Guest v. Leis*
255 F.3d 325, 226 (6th Cir. 2001). .............................................................................9

18

19 *Hallamore Corp. v. Capco Steel Corp.*
259 F.R.D. 76, 79 (D. Del. 2009) ...............................................................................4

20

21 *Jartech, Inc. v. Clancy,*
666 F.2d 403, 406 (9th Cir. 1982) ..............................................................................2

22

23 *Kamakana v. City and County of Honolulu*
447 F.3d 1172, 1179 (9th Cir. 2006) ..........................................................................5

24

25 *Kern-Tulare Water District v. City of Bakersfield,*
634 F.Supp. 656, 665 (E.D.Cal. 1986) .......................................................................7

26

27 *Kona Enterprises v. Estate of Bishop*
229 F.3d 877, 890 (9th Cir. 2000) ..............................................................................7

28

*Malibu Media, LLC v. Does 1-9*,
   Case No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012) ............................................................................................................ 1, 3

*Malibu Media, LLC v. Does 1-14*,
   Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25, 2012) .................... 4

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*
   09-60351-CIV, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010) ........................ 4

*Marek v. Chesny*
   473 U.S. 1, 11 (1985) ................................................................................................ 3

*Mitchell Bros. Film Group v. Cinema Adult Theater*
   604 F.2d 852 (5th Cir. 1979) .................................................................................... 2

*Patrick Collins, Inc. v. John Does 1-54*
   2012 WL 911432 (D.Ariz. Mar. 19, 2012) ..................................................... 2, 5, 11

*Penalbert-Rosa v. Fortuno-Burset.*
   631 F.3d 592 (1st Cir. 2011) ...................................................................................... 8

*Raw Films, Ltd. v. John Does 1-15*,
   2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)  ......................................................... 10

*Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc*
   351 F.3d 1229, 1232 (D.C. Cir. 2003) ...................................................................... 4

*Sony Music Entm't v. Does 1-40*,
   326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004) ........................................................... 8

*Sosa v. DirectTV*,
   437 F. 3d 923, 937 (9th Cir. 2006) ........................................................................... 3

*Third Degree Films v. Does 1-36*,
   2012 WL 2522151 (E.D.Mich. May 29, 2012) ................................................. 2, 11

*UMG Recording, Inc. v. Doe*,
   2008 WL 4104214 at *4 (N.D.Cal. 2008) ................................................................. 8

*U.S. v. Hambrick*
   Civ. No. 99-4793, 2000 WL 1062039 at *4 (4th Cir. Aug. 3, 2000) ........................ 9

*U.S. v. Kennedy*
    81 F.Supp.2d 1103, 1110 (D.Kan. 2000) ........................................................9

*Voltage Pictures, LLC v. Does 1-5,000*,
    818 F.Supp.2d 28, 35 (D.D.C. 2011) .........................................................5

**Statutes**

Fed.R.Civ.P. 26 ................................................................................................10

1  I.      **INTRODUCTORY STATEMENT**

2         Defendant John Doe 8's ("Doe 8" or "Defendant") motion opens with a

3  purported "brief history of mass doe litigation."  Defendant fails, however, to address

4  the genesis of these suits: the mass online infringement of Plaintiff Malibu Media

5  LLC's ("Plaintiff") duly copyrighted works by millions of people throughout the

6  country, including Defendant herein.  Indeed, the online theft of Plaintiff's property

7  greatly damages its business, products, and reputation, and this phenomenon is

8  pervasive in the adult movie industry.  According to a Miami New Times survey,

9  thirty two percent (32%) of respondents <u>admit</u> to illegally downloading their adult

10 movies.[1]  Put simply, Plaintiff's motivation for bringing these suits is to hold the

11 infringers liable for their theft and, by so doing, to deter the future theft of its movies.

12 If there were an easier way to stop the infringement, Plaintiff would immediately

13 pursue it.

14        Defendant argues that Plaintiff's business model is designed so that Plaintiff

15 may initiate litigation against multiple John Doe Defendants, obtain early requested

16 discovery from the ISPs to identify the ISP customers, and then present the ISP

17 customers with a situation akin to a "Sophie's choice" – namely, to settle with

18 Plaintiff for a nominal amount or be named as a defendant in this case and face

19 damage to their reputation associated with defending the case.  Defendant further

20 argues that the Court should limit Plaintiff's rights vis-à-vis a protective order, and

21 utilize its inherent power to limit how Plaintiff may proceed in this case.  Essentially,

22 Defendant is requesting the Court create a special exception under the Copyright Act

23 for cases such as this in which the copyrighted material contains pornography.  *See*

24 *Malibu Media, LLC v. John Does 1-9*, Case No. 8:12-cv-00669-SDM-AEP. Docket

25 _____

26 [1] See http://business.avn.com/articles/video/Miami-New-Times-Releases-Sex-
   Survey-Results-447237.html

27

28                                                    1

1    No. 25 at p. 7 (M.D.Fla. July 6, 2012).  Indeed, it is highly unlikely that Defendant's

2    concerns "would be as heightened and given as much attention by other courts if the

3    alleged protected material was copyrighted music rather than pornography." *Id.* at

4    n.3.

5    But the fact that pornographic material is at issue in this suit should have no

6    bearing on the Court's decision.  Indeed, bias against Plaintiff for the work that it

7    produces does not belong in a federal courthouse, particularly in light of the Fifth

8    Circuit's well-reasoned decision in *Mitchell Bros. Film Group v. Cinema Adult*

9    *Theater*, 604 F.2d 852 (5th Cir. 1979), which held that the copyright statute contains

10   no explicit or implicit bar to copyrighting obscene materials and provides for a

11   copyright of all creative works, obscene or non-obscene, that otherwise meet the

12   requirements of the Copyright Act.  *See also, Jartech, Inc. v. Clancy*, 666 F.2d 403,

13   406 (9th Cir. 1982) ("Acceptance of an obscenity defense [to copyright laws] would

14   fragment copyright enforcement, protecting registered materials in a certain

15   community, while, in effect, authorizing pirating in another locale.").

16   Defendant also goes to substantial efforts in his or her Motion to decry

17   Plaintiff's purpose and settlement attempts, but Defendant has not and cannot provide

18   one specific example of <u>any</u> abusive tactics that Defendant or counsel were subjected

19   to.  Instead, Defendant cites to cases that can only refer to vague, anecdotal

20   accusations of improper settlement tactics.  *See,* Motion, pp. 9-10.  But, as the

21   District of Arizona aptly concluded in a case similar to this, "[t]he likelihood that

22   [Defendant] will be subject to such tactics is minimal here; the Court will not

23   conclude based on the tactics of other lawsuits in other districts that this suit was

24   brought for a purely improper purpose." *Patrick Collins, Inc. v. Does 1-54*, 2012 WL

25   911432 (D.Ariz. Mar. 19, 2012); *see also, Third Degree Films v. Does 1-36,* 2012

26   WL 2522151 (E.D.Mich. May 29, 2012) ("To the extent that it is independent, the

27   Court notes that while Defendant claims that this suit was brought only to scare up

28

2

1 | settlements [Citation], Defendant has offered no case-specific facts supporting this

2 | claim. Rather, Defendant relies on the conduct of adult-film companies in other

3 | cases. *This guilt-by-association argument does not justify quashing the subpoena that*

4 | *this Plaintiff, Third Degree Films, served on Defendant's ISP* pursuant to an Order

5 | entered by Judge Murphy allowing this discovery." (emphasis added)).

6 |       Simply, Defendant's criticism of Plaintiff's attempt to settle its disputes with

7 | the doe defendants prior to naming and serving them with process is unfounded and

8 | unsupported, and "is simply without any merit in those cases where the John Doe

9 | Defendant is represented by counsel." *Malibu Media, LLC v. John Does 1-9*, Case

10 | No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7. Indeed, such settlement

11 | demands are routinely made by most – if not all – plaintiffs prior to the filing of a

12 | lawsuit, and are in line with the well-established public policy favoring resolution

13 | through settlements. *Marek v. Chesny*, 473 U.S. 1, 11 (1985) ("Rule 68's policy of

14 | encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it

15 | expresses a clear policy of favoring settlement of all lawsuits."). Moreover, Plaintiff

16 | has a First Amendment right under the petition clause to make a settlement demand.

17 | *See Sosa v. DirectTV*, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of

18 | the Petition Clause extend to settlement demands as a class," including those made

19 | during and prior to a suit.). The only difference between this case and the countless

20 | others filed every day by other plaintiffs in a broad array of civil litigation is that the

21 | Plaintiff does not have the ability to identify the defendants before the suit is filed.

22 |       At this stage of the litigation process, Plaintiff has no other option but to file

23 | suit against the owners of these IP addresses to obtain the infringers identity. If this

24 | Court were to follow Defendant's rationale, Plaintiff would have no recourse against

25 | the mass copyright infringement it suffers on a daily basis. Any such holding would

26 | be contrary to existing law and the express policy of Congress and the courts.

27 | Indeed, the Eighth Circuit explained that, as a practical matter, "copyright owners

28 |

1  cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of

2  persons engaged in that activity." *Charter Communications, Inc., Subpoena*

3  *Enforcement Matter*, 393 F.3d 771, 775 n. 3 (8th Cir. 2005).[2] "By filing this lawsuit

4  against unknown putative defendants and using the subpoena power to learn the

5  identity of internet service customers who infringe, copyright owners are able to take

6  steps to protect their interests, seek compensation for their misappropriated property,

7  and stop infringement." *Malibu Media, LLC v. John Does 1-14*, Civ. Action No. 12-

8  00764 (BAH), Docket 14 (D.D.C. July 25, 2012).[3]

9  **II.    JOINDER IS PROPER**

10      Plaintiff incorporates herein the joinder arguments made in Plaintiff's

11  Opposition to the Omnibus Motion That The Court: (1) Reconsider and Vacate Its

12  Order Granting Early Discovery; (2) Sever and Dismiss All Does Other Than Does

13  No. 1; No. 1; And (3) Enter A Protective Order made by Does 2 and 5, which is

14

15

16  [2] The Court of Appeals for the Eighth Circuit reversed the lower court's allowance
of a subpoena issued under section 512(h) of the Digital Millennium Copyright Act
(DMCA) to a cable operator that provided conduit service used by its subscribers to

17  download copyrighted material over peer-to-peer networks, finding that such
subpoena authority only applied when the ISP stored the infringing material on its

18  network (rather than on the customer's computer). *Accord Recording Indus. Ass'n of
Am. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229, 1232 (D.C. Cir. 2003). The

19  Eighth Circuit acknowledged that without this DMCA subpoena tool to discover the
identity of the alleged infringer, "organizations . . . can also employ alternative

20  avenues to seek this information, such as 'John Doe' lawsuits. In such lawsuits,
many of which are now pending in district courts across the country, organizations .

21  . . can file a John Doe suit, along with a motion for third-party discovery of the
identity of the otherwise anonymous 'John Doe' defendant." *In re Charter*

22  *Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d at 775 n.3.

23  [3] Defendant speciously contends that Plaintiff "intentionally issued subpoenas in far-
flung jurisdictions having no relation to the instant lawsuit, in order to maximize the

24  burden to the subscribers."  Motion, p.6.  To the contrary, the subpoenas are duly
issued in the districts wherein the Internet Service Providers or their registered

25  agents reside.  *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 09-60351-
CIV, 2010 WL 3419420, at *2 (S.D. Fla. Aug. 27, 2010) ("Typically, a subpoena for

26  production of documents must issue from the district where the documents are
located".); *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79 (D. Del. 2009).

27

28

4

filed concurrently herewith.

## III.   THE COURT SHOULD NOT ISSUE A PROTECTIVE ORDER

### A.   The Subpoena Is Not Designed to Embarrass

To the extent that Defendant is arguing that a protective order is necessary to save him or her from the potential embarrassment that he may face by being connected to this lawsuit, courts have overwhelmingly found that this is an insufficient basis for a protective order:

> Defendant claims he would prefer that the proceedings take place under seal, but offers no reason that disclosing the fact that a particular IP address is associated with his name constitutes annoyance, embarrassment, oppression, or undue burden. Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order.

*Patrick Collins, Inc. v. Does 1-54*, 2012 WL 911432 at *4; *see also*, *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."); *Voltage Pictures, LLC v. Does 1-5,000*, 818 F.Supp.2d 28, 35 (D.D.C. 2011) ("To the extent that the putative defendants seek protective orders to prevent disclosure of private identifying information, the Court has held that the putative defendants' First Amendment rights to anonymity in the context of their BitTorrent activity is minimal and outweighed by the plaintiff's need for the putative defendants' identifying information in order to protect its copyrights.").

Defendant cites to district court decisions whereby the courts – without any factual support – criticized Plaintiff's litigation strategy as an "extortion scheme" on the assumption that "plaintiff has no intention of bringing [the case] to trial." Motion, pp. 9-10.  But Plaintiff has every intention of serving the Doe defendants and

5

litigating this case.  Indeed, Plaintiff has sued and served numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of litigating this case as well.  *See, e.g., Malibu Media, LLC v. Hicks*, Case No. EDCV12-1550-VAP-SP (C.D.Cal.); *Malibu Media, LLC v. Creado*, Case No. CV12-7759-RGK-RZ (C.D.Cal.); *Malibu Media LLC v. Southgate*, 3:12-cv-00369-DMS-WMC (S.D.Cal.); *Malibu Media, LLC v. Abrahimzadez*, 1:12-cv-01200-ESH (D.D.C.); *Malibu Media LLC v. Bochnak*, 1:12-cv-07030 (N.D.Ill.); *Malibu Media LLC v. Siembida*, 1:12-cv-07031 (N.D.Ill.); *Malibu Media LLC v. Vancamp*, 2:12-cv-13887-PDB-DRG (E.D.Mich.); *Malibu Media LLC v. Fantalis*, 1:12-cv-00886-MEH (D.Colo.); *Malibu Media LLC v. Xu*, 1:12-cv-1866-MSK-MEH (D.Colo.); *Malibu Media LLC v. Allison*, 1:12-cv-1867-MSK-MEH (D.Colo.); *Malibu Media LLC v. Ramsey*, 1:12-cv-1868-MSK-MEH (D.Colo.); *Malibu Media LLC v. Tipton*, 1:12-cv-1869-MSK-MEH (D.Colo.); *Malibu Media LLC v. Kahrs*, 1:12-cv-1870-MSK-MEH (D.Colo.); *Malibu Media LLC v. Domindo*, 1:12-cv-1871-MSK-MEH (D.Colo.); *Malibu Media LLC v. Peng*, 1:12-cv-1872-MSK-MEH (D.Colo.); *Malibu Media LLC v. Maness*, 1:12-cv-1873-MSK-MEH (D.Colo.); *Malibu Media LLC v. Nelson*, 1:12-cv-1875-MSK-MEH (D.Colo.); *Malibu Media LLC v. Geary*, 1:12-cv-1876-MSK-MEH (D.Colo.); *Malibu Media LLC v. Detweiler*, 2:12-cv-4253-ER (E.D.Pa.); *Malibu Media LLC v. Johnston*, 2:12-cv-4200-JHS (E.D.Pa.).

### B.      The Subpoena Does Not Subject Defendant To Undue Burden

Although Rule 45 provides that a subpoena must be quashed if it "subjects a person to undue burden," this exception does not help Defendant with respect to the subpoena at issue herein. "Courts that have addressed this issue have concluded that the issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything." *See First Time Videos, LLC v. Does 1-18*, 2011 WL 4079177 at *1 (S.D.Ind. Sept. 13, 2011). Thus, only the ISP has standing to argue the

6

1 subpoena poses an undue burden to it, and in this case, it has not.  *Id.*; *see also*

2 *Donkeyball Movie, LLC v. Does*, 2011 WL 1807452 (D.D.C. May 12, 2011) ("the

3 putative defendant is not subject to the plaintiff's subpoena, and therefore does not

4 face any 'annoyance, embarrassment, oppression, or undue burden or expense' from

5 the plaintiff's discovery request.").

6 **IV.    THE COURT SHOULD NOT VACATE ITS ORDER ALLOWING**

7 **EARLY DISCOVERY**

8 Defendant finally argues that the Court should reconsider its Order Granting

9 Plaintiff Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference

10 ("Order").  [*See*, Docket no. 13.]  A motion for reconsideration is an "extraordinary

11 remedy, to be used sparingly in the interests of finality and conservation of judicial

12 resources." *Kona Enterprises v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

13 To succeed, a party must set forth facts or law of a strongly convincing nature to

14 convince the court to reverse its prior decision.  *See, e.g., Kern-Tulare Water*

15 *District v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part

16 and rev's in part on other grounds, 828 F.2d 514 (9th Cir. 1987).  When filing a

17 motion for reconsideration, Eastern District Local Rule 230(j) requires a party to

18 show "new or different facts or circumstances claimed to exist which did not exist or

19 were not shown upon such prior motion, or what other grounds exist for the

20 motion."

21 In its Order, this Court specifically found good cause for granting Plaintiff's

22 motion to serve early discovery.  [Docket no. 13, ¶ **4**.]  For the reasons set forth

23 below, the Court should not reconsider its prior Order.

24 **A.    Plaintiff Established Good Cause for Early Discovery**

25 "A plaintiff who is unaware of the identity of the person who has wronged

26 her can…proceed against a 'John Doe' … when the discovery is likely to reveal the

27 identity of the correct defendant." *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592

28

7

1   (1st Cir. 2011).  "In Internet infringement cases, courts routinely find good cause

2   exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a

3   Rule 26(f) conference, where a plaintiff makes: (1) a prima facie showing of

4   infringement, (2) there is no other way to identify the Doe Defendant, and (3) there

5   is a risk an ISP will destroy its logs prior to the conference."  *UMG Recording, Inc.*

6   *v. Doe*, 2008 WL 4104214 at *4 (N.D.Cal. 2008).  In addition, some courts also

7   analyze a defendant's First Amendment right to privacy in determining whether to

8   allow the discovery. In these cases, courts require Plaintiff to (4) specify the

9   discovery requested, (5) demonstrate a central need for the subpoenaed information

10  to advance the asserted claims, and (6) establish that the party's expectation of

11  privacy does not outweigh the need for the requested discovery. *Sony Music Entm't*

12  *v. Does 1-40*, 326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004).

13       In this case, Plaintiff satisfied the above-listed factors.  *First*, in its Complaint,

14  Plaintiff asserts that it holds the copyrights to the movies in Exhibit B thereto.

15  Complaint, ¶ 11 and Ex. B.  Further, the signed declaration of Tobias Fieser [Docket

16  no. 11-2] states that Plaintiff's research indicated that the Work has been infringed

17  upon and that he was able to isolate the transactions and the IP addresses being used

18  on the peer-to-peer network to reproduce, distribute, display, or perform Plaintiff's

19  copyrighted works.  *Second*, Plaintiff has established that it lacks any other means of

20  obtaining the subpoenaed information. Plaintiff only has the IP addresses and cannot

21  locate any further information. Rather, once the IP addresses, plus the date and time

22  of the detected and documented infringing activity are provided to the ISP, the ISPs

23  can access the identifying information of the subscriber.  Plaintiff has taken all of

24  the steps it can to identify the Doe defendants.  *Third*, Plaintiff demonstrated

25  through the declaration of Tobias Fieser that "[m]any ISPs only retain the

26  information sufficient to correlate an IP address to a person at a given time for a

27  very limited amount of time."  [Docket no. 11-2, ¶ 11.]  Thus, there is a chance that

28

8

1  the ISPs will destroy the logs needed by Plaintiff.

2          *Fourth*, Plaintiff has sufficiently described the John Doe Defendants by listing

3  the IP address assigned to them on the day Plaintiff alleges the Defendants engaged

4  in the infringing conduct in a chart attached as Exhibit A to the Complaint.  *Fifth*,

5  Plaintiff has demonstrated the need for the subpoenaed information in order to

6  advance its claims as there appears no other means of obtaining this information and

7  the information is needed in order to prosecute Plaintiff's viable claim for copyright

8  infringement.  *Sixth*, and finally, Plaintiff's interest in knowing Defendants' true

9  identities outweighs Defendants' interests in remaining anonymous. Plaintiff has a

10  strong legitimate interest in protecting its copyrights and it has been held that

11  copyright infringers have no legitimate expectation of privacy in the subscriber

12  information they provide to ISPs.  *Doe v. S.E.C.*, 2011 WL 4593181 at *3 (N.D.Cal.

13  Oct. 4, 2011) ("Internet subscribers do not have a reasonable expectation of privacy

14  in subscriber information they have already conveyed to their [Internet Service

15  Providers]."); *see also, Guest v. Leis*, 255 F.3d 325, 226 (6th Cir. 2001) (holding that

16  "computer users do not have a legitimate expectation of privacy in their subscriber

17  information because they have conveyed it to another person – the system

18  operator"); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039 at *4 (4th Cir.

19  Aug. 3, 2000) (a person does not have a privacy interest in the account information

20  given to the ISP in order to establish an email account); *Achte/Neinte Boll Kino*

21  *Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F.Supp.2d 212, 215 (D.D.C. 2010)

22  (same); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan. 2000) (defendant's right

23  to privacy was not violated when an ISP turned over his subscriber information

24  because there is no expectation of privacy in information provided to third parties).

25

26

27          **B.      The Subpoena Seeks Information That Is Reasonably Calculated to**

28                                                    9

1    **<u>Lead to the Discovery of Admissible Evidence</u>**

2        Defendant further argues that the Court's Order should be reconsidered

3    because the requested discovery is unlikely to identify the Doe defendants. Motion,

4    pp. 12-13. To the contrary, the information sought is relevant and discoverable.

5    Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery as

6    including "any nonprivileged matter that is relevant to any party's claim or defense

7    – including the existence, description, nature, custody, condition, and location of

8    any documents or other tangible things *and the identity of the location or persons*

9    *who know of any discoverable matter.*" Fed. R. Civ. P. 26(b)(1) (emphasis added).

10   Relevant information for discovery purposes includes any information "reasonably

11   calculated to lead to the discovery of admissible evidence." *Id.*

12       The Eastern District of Pennsylvania court recently discussed whether an IP

13   address was sufficient to identify the infringer:

14       The Court acknowledges that Verizon's compliance with the subpoena

15       may not directly reveal the identity of an infringer. Indeed, the
    subscriber information Verizon discloses will only reveal the account

16       holder's information, and it may be that a third party used that

17       subscriber's IP address to commit the infringement alleged in this case.

18   *Raw Films, Ltd v. John Does 1-15*, 2012 WL 1019067 (E.D.Pa. March 26, 2012)

19   (internal citations omitted). The Court went on to note that while the IP address did

20   not guarantee the subscriber was the infringer, "[t]he subpoena is specific enough to

21   give rise to a reasonable likelihood that information facilitating service upon proper

22   defendants will be disclosed if the ISPs comply." *Id.*

23       The information sought by Plaintiff falls squarely within the broad scope of

24   discovery and is therefore warranted in this matter. The identity of the IP address

25   holder is relevant under Rule 26, in that it is "reasonably calculated" to lead to the

26   identity of the infringer, whether it is the IP address holder or some other individual.

27   Thus, any concern about identifying a potentially innocent ISP customer, who

28

1  happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal
2  and not an issue that should warrant the Court to minimize or even prohibit the
3  otherwise legitimate, relevant, and probative discovery.[4] *See, e.g., Patrick Collins,*
4  *Inc. v. Does 1-54*, 2012 WL 911432 at *4 ("Although the Court acknowledges that
5  there is some social stigma attached to consuming pornography, Defendant
6  strenuously denies the allegations, and it is the rare civil lawsuit in which a
7  defendant is not accused of behavior of which others may disapprove. The nature of
8  the allegations alone do not merit a protective order."); *AF Holdings, LLC v. Does
9  1-62*, 2012 WL 488217 at *1 (S.D.Fla. Feb. 14, 2012); *Third Degree Films*, 2012
10  WL 2522151 (denying defendant's request for protective order permitting
11  anonymous participation in the lawsuit).
12  **V.   CONCLUSION**
13       For all of the foregoing reasons, Plaintiff respectfully requests that the Court
14  deny Defendant's motion to quash in its entirety.
15
16  DATED: September 13, 2012          KUSHNER LAW GROUP
17                              By:    /s/ Leemore L. Kushner
18                                     Leemore L. Kushner
                                       Attorneys for Plaintiff Malibu Media, LLC
19
20
21
22
23
24  _____
25  [4] Recent technological advances make it more likely that a wireless account will be secured and
26  can easily be traced to a household where the subscriber either is the infringer or knows the
    infringer.  Indeed, router manufacturers nowadays require users to employ security with the set-up
27  software.
28                              11

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this Case.

Dated:  September 13, 2012        KUSHNER LAW GROUP


By: */s/ Leemore Kushner*      .
           Leemore Kushner
           Attorneys for Plaintiff MALIBU MEDIA, LLC

Plaintiff's Opposition to Omnibus Motion for a Protective Order, Motion to Sever and Motion for Reconsideration