1  Leemore Kushner (SBN 221969)
   KUSHNER LAW GROUP
2  801 North Citrus Avenue
   Los Angeles, California 90038
3  Telephone:  (323) 515-7894
   Facsimile:  (323) 544-8170
4  Email: lkushner@kushnerlawgroup.com

5  Attorneys for Plaintiff Malibu Media, LLC

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 MALIBU MEDIA, LLC, a California          Case No. 12-1260-MCE-JFM
   limited liability company,
12                                          **OPPOSITION TO OMNIBUS
                Plaintiff,                  MOTION THAT THE COURT: (1)
13                                          RECONSIDER AND VACATE ITS
        v.                                  ORDER GRANTING EARLY
14                                          DISCOVERY; (2) SEVER AND
   JOHN DOES 1 through 13,                  DISMISS ALL DOES OTHER
15                                          THAN DOES NO. 1; (3) ENTER A
                Defendants.                 PROTECTIVE ORDER FILED BY
16                                          DOES 2 AND 5**

17                                          Date:  September 27, 2012
                                            Time: 11:00 a.m.
18                                          Place: Ctrm 26

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION……………….....……………………..…………………1

II.  PLAINTIFF'S MOTION TO RECONSIDER SHOULD BE DENIED …………..2

   A. The Doe Defendants Do Not Have a First Amendment Right to Proceed
      Anonymously……………………………………………………………..2

   B. The Subpoena Seeks Relevant Information That Is Likely To Identify The
      Infringer…………………………………………………………………4

   C. Plaintiff Has Every Intention of Litigating This Case……………………6

   D. Plaintiff Has Not Engaged In Abusive Litigation Tactics………………6

      1.   Plaintiff Is Not Engaged In Improper Settlement Tactics…………6

      2.   Defendants' Counsel Was *Not* Subjected to Any Abusive Tactics..8

III. JOINDER IS PROPER………………………………………………………..9

   A. Plaintiff Has Met Rule 20's Requirements for Permissive Joinder………10

      1.   Same Transaction, Occurrence or Series of Transactions………...11

         a.  Logical relationship test……………………………………11

         b.  Plaintiff properly pled a series of transactions……………14

         c.  It is not necessary for the Defendants to know each other…15

      2.   There are common issues of fact and law…………………………17

      3.   The Time Lapse Is Irrelevant……………………………………17

   B. Joinder Is Proper Because Each Defendant Is Jointly and Severally
      Liable……………………………………………………………………19

   C. Joinder Promotes Judicial Efficiency And Is Not Prejudicial …………21

   D. This Court Has Already Ruled That Joinder Is Proper...………………22

   E. California Courts Agree That Joinder Is Proper…………………………23

IV. A PROTECTIVE ORDER SHOULD NOT BE ISSUED…………………………24

1
2   V.  CONCLUSION...............................................................25
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records v. Napster, Inc*
  239 F.3d 1004, 1028 (9th Cir. 2001) ...........................................................................4

*Acciard v. Whitney*
  2008 WL 5120820 (M.D. Fla. Dec. 4, 2008)..............................................................16

*Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577,*
  736 F.Supp.2d 212, 215 (D.D.C. 2010) ..............................................................4, 25

*Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577,*
  2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ...........................3

*Adobe Systems, Inc. v. Canus Productions, Inc.,*
  173 F.Supp.2d 1044, 1055 (C.D. Cal. 2001) ...........................................................20

*AF Holdings LLC v. Does 1-1,058*
  -- F.Supp.2d --, 2012 WL 3204917 at *13 (D.D.C. August 6, 2012)...........18, 21, 22

*Alexander v. Fulton County, Ga.,*
  207 F.3d 1303 (11th Cir. 2000) ................................................................................18

*Arista Records, LLC v. Does 1-19,*
  551 F.Supp.2d 1, 11 (D.D.C. 2008)..............................................................3, 15, 24

*Berlin Media Art E.K. v. Does 1-144,*
  2011 WL 4056167 (E.D. CA. 2011)..........................................................................23

*Bravado Int'l Group Merch. Servs. v. Cha,*
  2010 WL 2650432 at *4 (C.D.Cal. June 30, 2010) ...................................................11

*Call of the Wild Movie v. Does 1-1062,*
  770 F.Supp.2d 332, 343 (D.D.C. 2011)...............................................................passim

*Carroll v. Nakatani*
  342 F.3d 934, 945 (9th Cir. 2003) ..............................................................................2

*Charter Communications, Inc., Subpoena Enforcement Matter,*
393 F.3d 771, 775 n. 3 (8th Cir. 2005) ..........................................................................1

*Columbia Pictures, Inc. v. Bunnell*
245 F.R.D. 443, 451-52 (C.D.Cal. 2007) ..........................................................................4

*Costar Group, Inc. v. Loopnet, Inc.,*
164 F. Supp.2d 688, 696 (M.D. 2001).............................................................................20

*Doe v. S.E.C.*
2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) ............................................................4

*Disparte v. Corp. Exec. Bd.,*
223 F.R.D. 7, 10 (D.D.C. 2004) ......................................................................................15

*Donkeyball Movie, LLC v. Does,*
810 F.Supp.2d 20, 26 (D.D.C. 2011).............................................................................24

*Elektra Entm't Group, Inc. v. Does 1-9,*
No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y. Sept. 8, 2004) ...........................3

*First Time Videos, LLC v. Does 1-76,*
2011 WL 3586245 (N.D. Ill. 2011) ................................................................................10

*First Time Videos, LLC v. Does 1-95,*
2011 WL 4724882 at *6 (N.D.Cal. Oct. 7, 2011) ..........................................................19

*Guest v. Leis*
255 F.3d 325, 226 (6th Cir. 2001). ................................................................................4

*Gulf Oil Company v. Bernard*
452 U.S.89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).............................24

*Hard Drive Productions, Inc. v. Does 1–46,*
2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) ...........................................................24

*Harper & Row Publishers, Inc. v. Nat'l Enters.*
471 U.S. 539, 560 (1985)..................................................................................................4

*In re Bittorrent Adult Film Copyright Infringement Cases*
2012 WL 1570765 (E.D.N.Y. June 12, 2012) .............................................................5, 9

*Kedra v. City of Philadelphia,*
    454 F. Supp. 652, 662 (E.D. Pa. 1978) ........................................................ 19

*Kona Enterprises v. Estate of Bishop*
    229 F.3d 877, 890 (9th Cir. 2000) .................................................................. 2

*League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency,*
    558 F.2d 914, 917 (9th Cir. 1997) ................................................................ 11

*Liberty Media Holdings, LLC v. Does 1-62,*
    2012 WL 628309 (S.D.Cal. Feb. 24, 2012) ......................................... *passim*

*Malibu Media, LLC v. Does 1-14,*
    Civ. Action No. 12-00764 (BAH), Docket 14 (D.D.C. July 25, 2012) ................. 1, 3

*Malibu Media, LLC v. Does 1-9,*
    Case No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012). 8

*Malibu Media, LLC v. Does 1-13,*
    2012 WL 2325588 (E.D.N.Y. June 19, 2012) ................................................. 9

*Malibu Media, LLC v. Does 1-10,*
    Case No. CV12-1647 JAK, Docket No. 22 (C.D.Cal. June 4, 2012) .................... 10

*Malibu Media, LLC v. Does 1-25,*
    2012 WL 2367555 at *3 (S.D.Cal. June 21, 2012) ........................................ 23

*Marek v. Chesny*
    473 U.S. 1, 11 (1985) .................................................................................... 8

*Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors,*
    983 F. Supp. 1167 (N.D. IL 1997) ................................................................ 20

*Milgard Tempering v. Selas Corp. of Am.,*
    902 F.2d 703, 715 (9th Cir. 1990) ................................................................ 23

*Mosley v. Gen. Motors Corp.*
    497 F.2d 1330, 1332 (8th Cir. 1974) ....................................................... 11, 12

*Murdoch v. Castro*
    489 F.3d 1063, 1067-68 (9th Cir. 2007) ................................................... 17, 22

*New Sensations, Inc. v. Does 1-1,474,*
  2011 WL 4407222, (N.D.Cal. 2011) ........................................................23

*New Sensations, Inc. v. Does 1745,*
  2011 WL 2837610 (N.D.Cal. 2011) ........................................................24

*OpenMind Solutions, Inc. v. Does 1-39,*
  2011 WL 4715200 (N.D. Cal. 2011) .............................................*passim*

*Patrick Collins, Inc. v. John Does 1-54,*
  2012 WL 911432 (D.Ariz. Mar. 19, 2012)...................................................7

*Patrick Collins, Inc. v. John Does 1-21,*
  2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) ...............................13, 14, 18

*Patrick Collins, Inc. v. John Does 34-51,*
  2012 WL 871269 (S.D.Cal. March 14, 2012) ..........................................10

*Patrick Collins, Inc. v. John Does 1-2590,*
  2011 WL 4407172 (N.D.Cal. 2011) ....................................................12, 23

*Raw Films, Ltd. v. John Does 1-15,*
  2012 WL 1019067 (E.D. Pa. Mar. 26, 2012)  ..........................................17

*Recording Indus. Ass'n of Am. v. Verizon Internet Servs., Inc*
  351 F.3d 1229, 1232 (D.C. Cir. 2003)..........................................................1

*Sony v. Tenenbaum*
  660 F.3d 487, 500-01 (1st Cir. 2011) .........................................................2

*Sony Music Entm't v. Does 1-40,*
  326 F.Supp.2d 556, 564-65 (S.D.N.Y. 2004). ...........................................3

*Sosa v. DirectTV*
  437 F. 3d 923, 937 (9th Cir. 2006) ..............................................................8

*Third Degree Films v. Does 1-36*
  2012 WL 2522151 (E.D.Mich. May 29, 2012) ...........................................7

*Third Degree Films, Inc. v. Does 1-178*
  Case No. C12-3858 MEJ, 2012 WL 3763649 (N.D.Cal. Aug. 29, 2012) ..........10, 23

*Twin City Fire Ins. Co. v. Employers Ins. of Wausau,*
   124 F.R.D. 652, 653 (D.Nev. 1989). ........................................................................24

*United Mine Workers of Am. v. Gibbs*
   383 U.S. 715, 724 (1966)................................................................................11, 16

*United States v. Mississippi*
   380 U.S. 128 (1965)................................................................................................16

*U.S. v. Hambrick*
   Civ. No. 99-4793, 2000 WL 1062039 at *4 (4th Cir. Aug. 3, 2000)..........................4

*West Bay One, Inc. v. Does 1-1653*
   270 F.R.D. 13, 16 n.4 (D.D.C. July 2, 2010) ............................................................3

**Statutes**

17 USC § 504................................................................................................................9

**Rules**

Fed. R. Civ. P. 20....................................................................................11, 16, 17

Fed. R. Civ. P. 26........................................................................................5. 24

Fed. R. Civ. P. 59..............................................................................................2

1   **I.      INTRODUCTION**

2          Defendants John Does 2 and 5 ("Defendants") have not articulated any valid

3   basis for this Court to reconsider its motion for early discovery, and the motion is

4   merely an attempt to divert the Court's attention from their digital theft by casting

5   Plaintiff in a negative light because of Plaintiff's effort to protect its copyright

6   through this and other similar lawsuits.  At this stage of the litigation, Plaintiff has no

7   option but to file suit against the owners of IP addresses to obtain the infringers'

8   identities.  Indeed, as a practical matter, "copyright owners cannot deter unlawful

9   peer-to-peer file transfers unless they can learn the identities of persons engaged in

10  that activity."  *Charter Communications, Inc., Subpoena Enforcement Matter*, 393

11  F.3d 771, 775 n. 3 (8th Cir. 2005).[1]  "By filing this lawsuit against unknown putative

12  defendants and using the subpoena power to learn the identity of internet service

13  customers who infringe, copyright owners are able to take steps to protect their

14  interests, seek compensation for their misappropriated property, and stop

15  infringement."  *Malibu Media, LLC v. John Does 1-14*, Civ. Action No. 12-00764

16  (BAH), Docket 14 (D.D.C. July 25, 2012).

17         To quash Plaintiff's subpoena pursuant to the instant motion would effectively

18  leave Plaintiff with no recourse against the mass copyright infringement it suffers on

19  _____

20  [1] The Court of Appeals for the Eighth Circuit reversed the lower court's allowance
    of a subpoena issued under section 512(h) of the Digital Millennium Copyright Act
21  (DMCA) to a cable operator that provided conduit service used by its subscribers to
    download copyrighted material over peer-to-peer networks, finding that such
22  subpoena authority only applied when the ISP stored the infringing material on its
    network (rather than on the customer's computer). *Accord Recording Indus. Ass'n of*
23  *Am. v. Verizon Internet Servs., Inc.,* 351 F.3d 1229, 1232 (D.C. Cir. 2003). The
    Eighth Circuit acknowledged that without this DMCA subpoena tool to discover the
24  identity of the alleged infringer, "organizations . . . can also employ alternative
    avenues to seek this information, such as 'John Doe' lawsuits. In such lawsuits,
25  many of which are now pending in district courts across the country, organizations .
    . . can file a John Doe suit, along with a motion for third-party discovery of the
26  identity of the otherwise anonymous 'John Doe' defendant." *In re Charter*
    *Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d at 775 n.3.
27

28                                              1

a daily basis.  Any such holding is contrary to existing law and the express policy of

Congress.  In 1999, Congress intentionally amended the Copyright Act to deter

individuals from online infringement by increasing statutory remedies:

> Congress did contemplate that suits like this [against individuals] were
> within the Act. Congress last amended the Copyright Act in 1999 *to*
> *increase the minimum and maximum awards available under § 504(c)*.
> *See* Digital Theft Deterrence and Copyright Damages Improvement
> Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time,
> Congress specifically acknowledged that *consumer-based,*
> *noncommercial use of copyrighted materials constituted actionable*
> *copyright infringement*. Congress found that 'copyright piracy of
> intellectual property flourishes, assisted in large part by today's world
> of advanced technologies,' and cautioned that 'the potential for this
> problem to worsen is great.'

*Sony v. Tenenbaum*, 660 F.3d 487, 500-01 (1st Cir. 2011) (emphasis added) (noting

that the legislative history of the Copyright Act addresses the concern of online

piracy).  As discussed in more detail below, Defendants' Motion does not provide

the Court with any sufficient basis to reconsider the Court's order authorizing early

discovery, to sever the case, or to enter a protective order.

## II.    PLAINTIFF'S MOTION TO RECONSIDER SHOULD BE DENIED

Although Rule 59(e) of the Federal Rules of Civil Procedure permits a district

court to reconsider and amend a previous order, reconsideration is an "extraordinary

remedy, to be used sparingly…."  *Kona Enterprises, Inc. v. Estate of Bishop*, 229

F.3d 877, 890 (9th Cir. 2000); *see also, Carroll v. Nakatani*, 342 F.3d 934, 945 (9th

Cir. 2003).  Thus, absent highly unusual circumstances, a motion for reconsideration

should not be granted "unless the district court is presented with *newly discovered*

*evidence, committed clear error, or if there is an intervening change in the*

*controlling law*."  *Id.* (emphasis added; internal quotes omitted).  Here, Defendants

have not presented the Court with any new *facts* or *evidence* that merit a

reconsideration of the Court's order granting early discovery.  Instead, Defendants'

1  argument is based on the unsupported and fantastical notion that Plaintiff is engaged

2  in coercive tactics.  As discussed below, it is not.  Plaintiff addresses below each of

3  Defendants' arguments.

4       A.     <u>**The Doe Defendants Do Not Have a First Amendment Right to**</u>

5                <u>**Proceed Anonymously**</u>

6       Defendants contend that the First Amendment affords them the right to

7  proceed anonymously in this action.  To the contrary, "First Amendment privacy

8  interests are exceedingly small where the 'speech' is the alleged infringement of

9  copyrights." *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008);

10 *see also Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1-4,577,*

11 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ("the protection

12 afforded to such speech is limited and gives way in the face of a *prima facie* showing

13 of copyright infringement"); *West Bay One, Inc. v. Does 1-1653*, 270 F.R.D. 13, 16

14 n.4 (D.D.C. July 2, 2010) (same); *Sony Music Entertainment v. Does 1-40*, 326 F.

15 Supp. 2d 556, 567 (S.D.N.Y. 2004) (First Amendment right of alleged file-sharers to

16 remain anonymous "must give way to the plaintiffs' right to use the judicial process

17 to pursue what appear to be meritorious copyright infringement claims."); *Elektra*

18 *Entm't Group, Inc. v. Does 1-9*, No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y.

19 Sept. 8, 2004) (finding that First Amendment right to anonymity overridden by

20 plaintiff's right to protect copyright).

21      Judge Howell of the District Court for the District of Columbia recently denied

22 a motion filed by Defendants' counsel (Morgan Pietz) containing virtually identical

23 arguments, and held that the Doe defendants could not proceed anonymously: "The

24 use of anonymity as a shield from copyright liability is not a motivation that warrants

25 protection from the Court.  To the extent that the putative defendant has a First

26 Amendment interest at stake, that interest is small.  ***The First Amendment does not***

27 ***protect copyright infringement.***" *Malibu Media, LLC v. John Does 1-14*, Case No.

28

1  12-00764 (BAH), Docket no. 14 at pp. 6-7 (emphasis added); *see also, Harper &*

2  *Row Publishers, Inc. v. Nat'l Enters.*, 471 U.S. 539, 560 (1985); *A&M Records v.*

3  *Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (holding that the First Amendment

4  does not protect use of peer-to-peer file sharing network that constitutes copyright

5  infringement); *Columbia Pictures, Inc. v. Bunnell,* 245 F.R.D. 443, 451-52 (C.D.Cal.

6  2007) ("To the extent the users are engaged in copyright infringement, the First

7  Amendment affords them no protection whatsoever.").  Even if the users are engaged

8  in legal file sharing, "they have little to no expectation of privacy because they are

9  broadcasting their identifying information to everyone in the BitTorrent 'swarm' as

10  they download the file." *Columbia Pictures*, 245 F.R.D. 443 at 452.

11          Moreover, numerous courts have found that copyright infringers have no

12  legitimate expectation of privacy in the subscriber information they provide to ISPs.

13  *Doe v. S.E.C.*, 2011 WL 4593181 at *3 (N.D.Cal. Oct. 4, 2011) ("Internet subscribers

14  do not have a reasonable expectation of privacy in subscriber information they have

15  already conveyed to their [Internet Service Providers]."); *see also, Guest v. Leis*, 255

16  F.3d 325, 226 (6th Cir. 2001) (holding that "computer users do not have a legitimate

17  expectation of privacy in their subscriber information because they have conveyed it

18  to another person – the system operator"); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000

19  WL 1062039 at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest

20  in the account information given to the ISP in order to establish an email account);

21  *Achte/Neinte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F.Supp.2d

22  212, 215 (D.D.C. 2010) (same); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan.

23  2000) (defendant's right to privacy was not violated when an ISP turned over his

24  subscriber information because there is no expectation of privacy in information

25  provided to third parties).

26      **B.    The Subpoena Seeks Relevant Information That Is Likely To**

27          **Identify The Infringer**

28                                                        4

1    Defendants argue that the Court should reconsider its Order authorizing early

2  discovery because the subpoena is not likely to reveal the identities of the Doe

3  defendants.  But even if Defendants are not the actual infringers, the information

4  sought is still relevant and discoverable.  Indeed, Rule 26 of the Federal Rules of

5  Civil Procedure defines the scope of discovery as including "any nonprivileged

6  matter that is relevant to any party's claim or defense – including the existence,

7  description, nature, custody, condition, and location of any documents or other

8  tangible things *and the identity of the location or persons who know of any*

9  *discoverable matter*."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Relevant

10  information for discovery purposes includes any information "reasonably calculated

11  to lead to the discovery of admissible evidence." *Id.*

12    The information sought by Plaintiff – namely, information sufficient to

13  identify the Doe defendants – falls squarely within the broad scope of discovery and

14  is therefore warranted in this matter. Indeed, the identity of the IP address holder is

15  "reasonably calculated" to lead to the identity of the infringer, whether it is the IP

16  address holder or some other individual (*e.g.*, an individual residing in Defendants'

17  home). Thus, any concern about identifying a potentially innocent ISP customer,

18  who happens to fall within the Plaintiff's discovery requests upon the ISPs, is

19  minimal and not an issue that should warrant the Court to minimize or even prohibit

20  the otherwise legitimate, relevant, and probative discovery.

21    Defendants rely heavily on Judge Brown's opinion in *In re BitTorrent Adult*

22  *Film Copyright Infringement Cases*, 2012 WL 1570765, *14 (E.D.N.Y. May 1,

23  2012), where Judge Brown questioned the likelihood that the infringer was the

24  owner of the IP address.  However, recent technological advances make it more

25  likely that a wireless account will be secured and can easily be traced to a household

26  where the subscriber either is the infringer or knows the infringer.  Recently, PC

27  Magazine published an article stating: "These days, you are lucky to find one in 100

28  _____

5

Wi-Fi connections that are not protected by passwords of some sort."[2] "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software.  As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[3]  This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households do have closed, protected wireless.

The information sought by Plaintiff is relevant under Rule 26 and falls squarely within the broad scope of discovery, and is therefore warranted in this matter.

## C.   Plaintiff Has Every Intention of Litigating This Case

Defendants erroneously suggest that Plaintiff has no intention of actually litigating the case and that "no defendant has ever been served in one of these mass copyright cases."  Motion, p.10.  Defendants are wrong.  Plaintiff has sued and served numerous individual defendants for copyright infringement in courts throughout the country, and has every intention of litigating this case as well.[4]

---

[2] *See Free Wi-Fi is Gone Forever*, www.pcmag.com/article2/0,2817,2402137,00.asp

[3] *Id.*

[4] *See, e.g., Malibu Media, LLC v. Creado*, CV12-7759-RGK-SS (C.D.Cal.); *Malibu Media, LLC v. Creado*, CV12-7759-RGK-SS (C.D.Cal.); *Malibu Media LLC v. Hicks*, EDCV12-1550 VAP (SPx) (C.D.Cal.); *Malibu Media, LLC v. Abrahimzadez*, 1:12-cv-01200-ESH (D.D.C.); *Malibu Media LLC v. Bochnak*, 1:12-cv-07030 (N.D.Ill.); *Malibu Media LLC v. Siembida*, 1:12-cv-07031 (N.D.Ill.); *Malibu Media LLC v. Vancamp*, 2:12-cv-13887-PDB-DRG (E.D.Mich.); *Malibu Media LLC v. Fantalis*, 1:12-cv-00886-MEH (D.Colo.); *Malibu Media LLC v. Xu*, 1:12-cv-1866-MSK-MEH (D.Colo.); *Malibu Media LLC v. Allison*, 1:12-cv-1867-MSK-MEH (D.Colo.); *Malibu Media LLC v. Ramsey*, 1:12-cv-1868-MSK-MEH (D.Colo.); *Malibu Media LLC v. Tipton*, 1:12-cv-1869-MSK-MEH (D.Colo.); *Malibu Media LLC v. Kahrs*, 1:12-cv-1870-MSK-MEH (D.Colo.); *Malibu Media LLC v. Domindo*, 1:12-cv-1871-MSK-MEH (D.Colo.); *Malibu Media LLC v. Peng*, 1:12-cv-1872-MSK-MEH (D.Colo.); *Malibu Media LLC v. Maness*, 1:12-cv-1873-MSK-MEH (D.Colo.); *Malibu Media LLC v. Nelson*, 1:12-cv-1875-MSK-MEH (D.Colo.); *Malibu Media LLC v. Geary*, 1:12-cv-1876-MSK-MEH (D.Colo.); *Malibu Media LLC v. Detweiler*, 2:12-cv-4253-ER (E.D.Pa.); *Malibu Media LLC v. Johnston*, 2:12-cv-4200-JHS (E.D.Pa.); *Malibu Media, LLC v. Sohail Abrahimzadez*, 1:12-cv-01200-ESH (D.D.C.).

1    D.    **Plaintiff Has Not Engaged In Abusive Litigation Tactics**

2         1.    Plaintiff Is Not Engaged In Improper Settlement Tactics

3    Without any factual support whatsoever, Defendants contend that Plaintiff is

4  engaged in abusive litigation tactics to coerce settlements. Defendants are

5  attempting to influence this Court into making a decision based on accusations in

6  other cases involving other counsel and other plaintiffs. Indeed, Defendants cite to

7  cases that can only refer to vague, anecdotal accusations of improper settlement

8  tactics.  These erroneous conclusions are propagated by anti-copyright blogs

9  (including Mr. Pietz's blog) as a suggested defense strategy.  While Defendants go

10  to substantial effort to decry Plaintiff's purpose and settlement attempts, Defendants

11  have not – and cannot – provide one specific example of Plaintiff improperly

12  holding a defendant to account.

13    The District of Arizona aptly concluded in a case similar to this that "[t]he

14  likelihood that [Defendant] will be subject to such tactics is minimal here; the Court

15  will not conclude based on the tactics of other lawsuits in other districts that this suit

16  was brought for a purely improper purpose." *Patrick Collins, Inc. v. Does 1-54*,

17  2012 WL 911432 (D.Ariz. Mar. 19, 2012); *see also, Third Degree Films v. Does 1-*

18  *36,* 2012 WL 2522151 (E.D.Mich. May 29, 2012) ("Defendant has offered no case-

19  specific facts supporting this claim [of coercive settlement tactics]. Rather,

20  Defendant relies on the conduct of adult-film companies in other cases. *This guilt-*

21  *by-association argument does not justify quashing the subpoena that this Plaintiff,*

22  *Third Degree Films, served on Defendant's ISP* pursuant to an Order entered by

23  Judge Murphy allowing this discovery." (emphasis added)).

24    Defendants' criticism of Plaintiff's attempt to settle its disputes with the doe

25  defendants prior to naming and serving them with process is unfounded and

26  unsupported.  Indeed, such settlement demands are routinely made by most – if not

27  all – plaintiffs prior to the filing of a lawsuit, and are in line with the well-

28

7

1    established public policy favoring resolution through settlements.  *Marek v. Chesny*,

2    473 U.S. 1, 11 (1985) ("Rule 68's policy of encouraging settlements is neutral,

3    favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring

4    settlement of all lawsuits.").  Moreover, Plaintiff has a First Amendment right under

5    the petition clause to make a settlement demand.  *See Sosa v. DirectTV*, 437 F. 3d

6    923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to

7    settlement demands as a class," including those made during and prior to a suit.).

8    The only difference between this case and the countless others filed every day by

9    other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have

10   the ability to identify the defendants before the suit is filed.

11              2.    Defendants' Counsel Was *Not* Subjected to Any Abusive Tactics

12         The declaration submitted by Mr. Pietz in support of the Motion, which was

13   initially filed in another case pending in the Central District of California, *Malibu

14   Media v. Does 1-10*, Case No. CV12-3615-RGK-SSx ("Central District Case"), is

15   fraught with hearsay statements that Mr. Pietz has no personal knowledge of, and

16   fails entirely to identify a single "abusive" litigation tactic employed by Plaintiff.

17         As an initial matter, the defendant in that case was clearly represented by

18   counsel (Mr. Pietz), and neither Plaintiff's counsel nor Plaintiff had any

19   communication whatsoever with the defendant.  It was simply without merit for Mr.

20   Pietz to claim that a "shake down" occurred.  *Malibu Media, LLC v. John Does 1-9*,

21   Case No. 8:12-cv-00669-SDM-AEP, Docket no. 25 at p. 7 (M.D.Fla. July 6, 2012).

22   Plaintiff will address each of the five purported "tactics" addressed in the Pietz

23   declaration, which, even if true, do not identify any wrongful conduct by Plaintiff.

24         First, Mr. Pietz criticizes Plaintiff for employing an individual to discuss

25   settlements or potential settlements with defendants.  This is no different than a

26   company employing a paralegal or litigation support team, and that fact alone does

27   not lend itself to the conclusion that the individual conducted a "shake down."

28

Indeed, in the case referred to by Mr. Pietz in his declaration, ***it was Mr. Pietz who contacted Plaintiff to discuss settlement***.  Plaintiff did not initiate the discussions.

Second, Mr. Pietz incredulously contended that in serving subpoenas, Plaintiff violated an order issued by Magistrate Judge Brown in another case in the Eastern District of New York. *See In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765.  Plaintiff's subpoenas, however, were in direct compliance with Judge King's and Judge Eick's orders in the Central District Case authorizing Plaintiff to "take any necessary action" to ascertain the identities of the Doe defendants. Moreover, Judge Brown's decision was not binding precedent on Central District, and his decision has been rejected by Judge E. Thomas Boyle of the Eastern District of New York, who not only authorized subpoenas in a similar case but also denied a motion to quash finding that joinder was proper. *Malibu Media, LLC v. John Does 1-13*, 2012 WL 2325588 (E.D.N.Y. June 19, 2012).

Fourth, Mr. Pietz contends that the statutory damages range was misrepresented to him.  This is a blatant misrepresentation.  Indeed, the statutory minimum for copyright infringement is not $200 per infringement.  Section 504(c)(1) of the Copyright Act specifically prescribes statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just," and allows the Court to increase the award to $150,000 where willful infringement is found.  17 U.S.C. 504(c)(1)-(2).  The statute does not provide an alternative minimum, but rather gives the court discretion to lower the award to an amount of not less than $200 where innocent infringement occurred.  Here, and in the Central District Case, Plaintiff alleged in its Complaint that the Defendants' acts of copyright infringement were committed willfully, and Defendants' pattern of illegal downloading is evidence of their willful infringement.  [Docket no. 1 (Complaint), ¶¶ 52, 62.]

Fifth, it defies logic that Plaintiff's use and choice of a technical expert can be considered an abusive tactic.

9

1   In sum, Defendants have not offered any proof – because there is none – that

2   Plaintiff (or its counsel) has engaged in any abusive litigation tactics.

3   **III.   JOINDER IS PROPER**

4   Joinder in BitTorrent copyright infringement cases has been thoroughly

5   analyzed in many opinions and has been permitted where, as here: (a) the complaint

6   clearly explains how BitTorrent works through a series of transactions, (b) all of the

7   defendants live in the district (eliminating personal jurisdiction and venue issues), (c)

8   all of the defendants were part of the same exact swarm of peer infringers as

9   evidenced by a unique cryptographic hash value, and (d) Plaintiff pled that the

10   Defendants are contributorily liable for each other's infringement. *See First Time*

11   *Videos, LLC v. Does 1-76*, 2011 WL 3586245 (N.D. Ill. 2011) (stating that "the

12   overwhelming majority of courts have denied as premature motions to sever prior to

13   discovery"). Numerous courts in California have held that joinder is proper in similar

14   BitTorrent copyright infringement cases.  *See, e.g., Third Degree Films, Inc. v. Does*

15   *1-178*, Case No. C12-3858 MEJ, 2012 WL 3763649 (N.D.Cal. Aug. 29, 2012);

16   *Malibu Media, LLC v. John Does 1-10*, Case No. CV12-1647 JAK, Docket No. 22

17   (C.D.Cal. June 4, 2012); *Patrick Collins, Inc. v. John Does 34-51*, 2012 WL 871269

18   at * 1 (S.D.Cal. March 14, 2012) (rejecting the argument that joinder is improper on

19   the grounds that "[b]y its terms, Rule 45(c)(3) does not provide authority for a court

20   to modify or quash a subpoena on the grounds of misjoinder."); *Liberty Media*

21   *Holdings, LLC v. Does 1*-62, 2012 WL 628309 (S.D.Cal. Feb. 24, 2012); *OpenMind*

22   *Solutions, Inc. v. Does 1-39*, 2011 WL 4715200 (N.D.Cal. Oct. 7, 2011) (finding that

23   Plaintiff met the permissive joinder requirements and under Rule 20(a)(2)).

24   **A.   Plaintiff Has Met Rule 20's Requirements for Permissive Joinder.**

25   Under Rule 20, defendants may be joined in one action when claims arise from

26   the same transaction or occurrence or series of transactions or occurrences, and any

27   question of law or fact in the action is common to all defendants.  Fed. R. Civ. P.

28

20(a)(2). The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974); *Liberty Media Holdings*, 2012 WL 628309 at *7 ("Rule 20(a) is designed to promote judicial economy and trial convenience.").

Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, and (2) some question of law or fact common to all the parties must arise in the action. Fed. R. Civ. P. 20(a)(2). As discussed below, this case meets both requirements.

**1.        Same Transaction, Occurrence or Series of Transactions.**

a.        Logical relationship test.

"The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Bravado Int'l Group Merch. Servs. v. Cha*, 2010 WL 2650432 at *4 (C.D.Cal. June 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Typically, this means that a party "must assert rights…that arise from related activities – a transaction or an occurrence or a series thereof." *Id.* (citation omitted). Courts across the country use the "logical relationship" test to ascertain whether the right to relief arises out of the same transaction of series of transactions:

"'Transaction' is a word of flexible meaning. *It may comprehend a*

11

*series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.*" *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371 (1926). Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. [Citation.]  The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  *Absolute identity of all events is unnecessary.*

*Mosley*, 497 F.2d 1330. The logical relationship test has been consistently used in decisions concerning BitTorrent copyright infringement in suits across the country, and courts have routinely held that joinder is proper in BitTorrent actions because of the unique nature of BitTorrent technology.  *See, e.g., Patrick Collins, Inc. v. John Does 1-2590*, 2011 WL 4407172 at *6 (N.D.Cal. 2011); *OpenMind Solutions, Inc.*, 2011 WL 4715200, *6; *Call of the Wild Movie v. Does 1-1062*, 770 F.Supp.2d 332, 343 (D.D.C. 2011).

As the Southern District of California recently held:

Cases involving BitTorrent technology raise a new and distinct method of alleged copyright infringement that was not possible with the earlier P2P technology, mainly that BitTorent users collectively share the same exact file by each contributing a small piece of the file to the user downloading the file.  Furthermore, unlike the earlier P2P technology, the BitTorrent file-sharing protocol makes every downloader also an uploader of the illegally transferred file.  This distinguishes BitTorrent cases from the earlier P2P cases.  Given this unique theory of copyright infringement, it is possible that BitTorrent users identified with the alleged illegal sharing of the same file are 'logically related' and are 'acting in concert.'

*Liberty Media Holdings*, 2012 WL 628309 at *7.

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near-identical case, expanding substantial effort to understand the allegations in the complaint and the applicable law:

12

Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant [Citation]. It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.

By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012). Judge Randon then explained through the force of clear deductive logic that each Defendant obtained the piece of Plaintiff's movie in one of four ways, all of which relate directly back to one individual seed.

If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
    1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
    2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
    3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
    4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.

In other words, in the universe of possible transactions, at some point,

13

> each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

*Id.* Having limited the universe to four possibilities the court correctly concluded the transaction was logically related:

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

*Id.* In other words, by causing *all* users to distribute the file, BitTorrent ensures that all peers in a swarm materially aid every other peer. This critical fact makes BitTorrent different than every other peer-to-peer network, and is one important distinguishing factor that renders joinder proper herein.

                    b.     Plaintiff properly pled a series of transactions.

With respect to the particular swarm at issue here, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remained the same within the swarm. Complaint, ¶¶ 40-44. Further, the alleged infringers all participated in the same exact swarm and downloaded the same exact copyrighted file. Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to Serve a Subpoena Prior to a Rule 26(f) Conference [Dkt No. 11-2], ¶¶ 19-20. Even after a Doe defendant disconnects from the swarm, the parts of the file that he or she downloaded and uploaded will continue to be transferred to the other Doe defendants remaining in the swarm. *See OpenMind Solutions*, 2011 WL 4715200 at*6 (finding that Plaintiff provided enough specificity to make a preliminary determination that the doe defendants were part of the same swarm and holding that

14

1  "Plaintiff's claims against Defendants appear logically related").

2       Simply, here, each putative Defendant is a possible source for Plaintiff's

3  copyrighted work, and is responsible for distributing the work to the other putative

4  defendants, who are also using the same BitTorrent technology to copy the identical

5  copyrighted material.  *See Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C.

6  2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is

7  "flexible."). While Defendants may be able to rebut these allegations later, Plaintiff

8  has sufficiently alleged that its claims against Defendants stem from the same

9  transaction or occurrence, and are logically related.  *See Arista Records, LLC v.

10  Does 1-19*, 551 F.Supp.2d 1, 11 ("While the Court notes that the remedy for

11  improper joinder is severance and not dismissal, … the Court also finds that this

12  inquiry is premature without first knowing Defendants' identities and the actual

13  facts and circumstances associated with Defendants' conduct.").  Indeed, Exhibit A

14  to the Complaint reflects that each of the Doe defendants herein were present in the

15  same swarm on BitTorrent and shared pieces of the same seed files.

16       Moreover, while the logical relationship test does not require it, should this

17  matter go trial, Plaintiff will prove that the Defendants' infringement was committed

18  through the same transaction or through a series of transactions with mathematical

19  certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent

20  Trackers would have caused the entire series of transactions to be different *but for*

21  each of the Defendants' infringements.

22          c.    It is not necessary for the Defendants to know each other.

23       The contention that all defendants must have a direct connection to the other

24  is a rigid approach to joinder and contrary to Supreme Court precedent.  "Under the

25  Rules, the impulse is toward entertaining the broadest possible scope of action

26  consistent with fairness to the parties; joinder of claims, parties and remedies is

27  strongly encouraged." *United Mine Workers*, 383 U.S. at 724.  "The touchstone of

28

15

Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did." *Acciard v. Whitney*, 2008 WL 5120820 (M.D. Fla. Dec. 4, 2008).  In *United States v. Mississippi*, 380 U.S. 128 (1965), the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars acted in concert with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common issue of law and fact.  *Id.* at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142.  Indeed, the Supreme Court held all of the defendants were properly joined because they were all acting on the basis of the same system, which created a transactional relatedness.

Likewise, here, it is not necessary for each of the defendants to have directly interacted with each other defendant, or have shared a piece of the file with each and every defendant when downloading the movie.  The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  In doing so, the

16

1  Defendants all acted under the same exact system.

2        The Honorable Mary McLaughlin from the Eastern District of Pennsylvania, ,

3  recently addressed this exact issue in a similar BitTorrent copyright infringement

4  action.  Judge McLaughlin held joinder was proper even if the Doe defendants did

5  not transmit the pieces directly to each other because the claims arise out of the same

6  series of transactions:

7        [E]ven if no Doe defendant directly transmitted a piece of the Work to
       another Doe defendant, the Court is satisfied at this stage of the
8        litigation the claims against each Doe defendant appear to arise out of
       the same series of transactions or occurrences, namely, the transmission
9        of pieces of the same copy of the Work to the same investigative
       server.
10

11  *Raw Films v. John Does 1-15,* 2012 WL 1019067 at *4 (E.D.Pa. Mar. 26, 2012).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 2.      There Are Common Issues of Fact and Law.

The second requirement for permissive joinder under Rule 20(a)(2) requires Plaintiff's claims to contain a common question of law or fact. Fed. R. Civ. P. 20(a)(2)(B).  This requirement is clearly met.  Here, Plaintiff will have to establish the same legal claims concerning the validity of its copyrights and the infringement of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore, Plaintiff must prove that each individual named as a defendant used the same BitTorrent file-sharing protocol to illegally distribute and download its copyrights and, consequently, factual issues related to how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the infringing activity will be essentially identical for each Defendant. *See Call of the Wild*, 770 F.Supp.2d 332 at 343 ("In each case, the plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."). The commonality in facts and legal claims support joinder under Rule 20(a)(2)(B).

## 3.      The Time Lapse Is Irrelevant.

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded.  If, as in this case, a Bittorrent user does not physically remove automatic seeding, an alleged infringer will likely seed and distribute a movie for months at a time.  As the Eastern District of Michigan explained:

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not

18

required for joinder.

*Patrick Collins*, 2012 WL 1190840 at *9.

The court went on to explain why time constraints should not impact the determination that the infringements occurred through a series of transactions: "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Id.*

In *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir. 2000) *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), the Eleventh Circuit found that a lapse of a year between the events at issue is a "short time frame" for joinder purposes:

> As for the first requirement, all of the Plaintiffs' claims stem from *the same core allegation that they were subject to a systemic pattern* or practice of race-based discrimination against white law enforcement officers by Sheriff Barrett *in her first year in office*. Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame.

*Id.* at 1324 (emphasis added).  Here, all of the defendants engaged in the same systematic pattern of infringement.  And the time frame between the defendants on Exhibit A of the Complaint spans only a two-month period from the first hit date to the last hit date.  *See AF Holdings LLC v. Does 1-1,058*, -- F.Supp.2d --, 2012 WL 3204917 at *13 (D.D.C. August 6, 2012) ("Although some IP addresses in the Complaint are identified as infringing the plaintiff's copyright four months apart, at this stage there is no basis to rebut plaintiff's claims that the Listed IP Addresses were, at least potentially, part of the same swarm and provided or shared pieces of the plaintiff's copyrighted work.").

The Northern District of California is in accord: "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the same swarm, downloading

19

1  and uploading the same file." *First Time Videos v. Does 1-95*, 2011 WL 4724882 at

2  *6 (N.D.Cal. Oct. 7, 2011); *OpenMind Solutions*, 2011 WL 4715200 at*6 (same).

3  "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that

4  he downloaded and uploaded will continue to be transferred to other Doe

5  Defendants remaining in the swarm." *First Time Videos*, 2011 WL 4724882 at *6.

6      Other courts, when ruling on the issue of joinder have held that even when

7  conduct occurs over a lengthy period of time, defendants may still be properly

8  joined as long as the conduct is reasonably related.  *See Kedra v. City of*

9  *Philadelphia*, 454 F. Supp. 652, 662 (E.D. Pa. 1978) (holding joinder is proper when

10 claims against police officers including unlawful searches, detentions, beatings and

11 similar occurrences of multiple plaintiffs took place over a period of time).

12      There is no logical reason why the systematic conduct alleged could not
        extend *over a lengthy time period* and, on the face of these allegations,
13      there is nothing about the extended time span that attenuates the factual
        relationship among all of these events.  The claims against the
14      defendants "aris(e) out of the same transaction, occurrence, or series of
        transactions or occurrences" for purposes of Rule 20(a), and therefore
15      joinder of defendants in this case is proper.

16 *Id.* (emphasis added).  Similarly, in this case, while the actions of each of the

17 defendants may have taken place over a period of time, the actions all arose from

18 one initial seed and all display the same, related systematic conduct.

19      **B.**    **Joinder Is Proper Because Each Defendant Is Jointly and Severally**

20          **Liable.**

21      Joinder is also proper because Plaintiff pled that each defendant is jointly and

22 severally liable for each of the other defendant's infringement.  "It is, today, a given

23 that 'one who, with knowledge of the infringing activity, induces, causes or

24 materially contributes to the infringing conduct of another, may be held liable as a

25 'contributory infringer.'"  *Costar Group, Inc. v. Loopnet, Inc.*, 164 F. Supp.2d 688,

26 696 (M.D. 2001).  Here, Plaintiff properly pled contributory infringement

27

28                                    20

1 (Complaint, ¶¶ 54-63), and will prove that there was one initial seeder that uploaded

2 the subject torrent file identified by the unique hash value, and that when a

3 Defendant receives a piece from a downstream infringer (*i.e.*, an infringer who

4 already had that piece), then that Defendant will automatically begin distributing the

5 piece it received from the downstream infringer to others. Plaintiff will thereby

6 prove that said Defendant materially assists the downstream infringer's direct

7 infringement of Plaintiff's exclusive right to "redistribute . . . the Work. . . ." in

8 violation of 17 U.S.C. § 106(3) and 17 U.S.C. §501. Similarly, Plaintiff will prove

9 that when a Defendant provides a piece of Plaintiff's copyrighted work to an

10 upstream infringer, the upstream infringer both sends that piece to other infringers

11 and will also assemble the entire Work. Accordingly, by delivering a piece to an

12 upstream infringer, the Defendant is contributorily liable for materially assisting the

13 upstream infringer to redistribute, perform and display the Work in violation of 17

14 U.S.C. § 106(3)-(5) and 17 U.S.C. § 501.

15       Since one of the grounds for permissive joinder is joint and several liability,

16 should the Court hold that joinder is not permitted, then any such holding would

17 effectively summarily adjudicate Plaintiff's claim for contributory infringement.

18 Such a holding would be erroneous because contributory infringement is "a question

19 of fact for trial." *Adobe Systems, Inc. v. Canus Productions, Inc.*, 173 F.Supp.2d

20 1044, 1055 (C.D. Cal. 2001); *Marobie-FL, Inc. v. National Ass'n of Fire Equipment

21 Distributors*, 983 F. Supp. 1167 (N.D. IL 1997) ("fact questions precluded summary

22 judgment with respect to providers' liability for contributory infringement").

23 Moreover, since BitTorrent works through the cooperative exchange among peers in

24 a swarm, claims for contributory infringement must be permitted or the law would

25 be inconsistent with the very nature of BitTorrent.

26     **C.**     <u>**Joinder Promotes Judicial Efficiency And Is Not Prejudicial**</u>

27       At this stage in the proceedings, joinder "is the single, most efficient

28

1  mechanism available for the plaintiff to obtain information to identify those illegally

2  downloading and distributing its movie." *AF Holdings LLC*, -- F.Supp.2d --, 2012

3  WL 3204917 at *13.  Indeed, "[j]oinder in a single case of putative defendants who

4  allegedly infringed the same copyrighted material promotes judicial efficiency and,

5  in fact, is beneficial to the putative defendants." *Open Mind Solutions*, 2011 WL

6  4715200 at *7; *see also*, *Call of the Wild*, 770 F.Supp.2d at 344 (same).

7        Here, Plaintiff seeks to obtain identifying information from ISPs so that it can

8  properly name and serve Defendants. If the Court were to consider severance at this

9  juncture, Plaintiff would face significant obstacles in its efforts to protect its

10  copyright from illegal file-sharers, and this would only needlessly delay the case.

11  Plaintiff would be forced to file 59 separate lawsuits, in which it would then move to

12  issue separate subpoenas to ISPs for each defendant's identifying information.

13  Plaintiff would additionally be forced to pay the Court separate filing fees in each of

14  these cases, which would further limit its ability to protect its legal rights. "This

15  burden for the plaintiff – not to mention the judicial system – would significantly

16  frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in

17  the alleged infringing activity." *AF Holdings LLC, supra,* 2012 WL 3204917 at

18  *13; *see also Call of the Wild*, 770 F.Supp.2d at 334 ("This would certainly not be in

19  the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and

20  inexpensive determination of the action.'" (citation omitted)).

21        Furthermore, the unknown Doe defendants are not prejudiced by joinder at

22  this stage in the litigation:

23        The unknown individuals alleged to have infringed the plaintiff's
          copyright are not prejudiced by joinder.  These individuals are
24        identified only by the IP address assigned to the computers found by
          the plaintiff being used for allegedly infringing activity, and they are
25        not named as defendants in this case.  Given that the plaintiff has not
          named or asserted claims against the individuals associated with the
26        Listed IP Addresses, these unknown individuals have no obligation to
          respond to the Complaint or assert a defense.  If the plaintiff chooses to
27        name as a defendant any of these unknown individuals – after obtaining

28                                          22

> their information and evaluating the viability of a lawsuit – the defendants may then be able to demonstrate prejudice by joinder with others accused of similar activity. *Until that time, these individuals can demonstrate no legally cognizable harm by virtue of the plaintiff filing a lawsuit against 'John Does.'*

*AF Holdings LLC*, 2012 WL 3204917 at *13; *see also Call of the Wild,* 770 F.Supp.2d at 334 (declining to sever defendants where parties joined promotes more efficient case management and discovery and no party prejudiced by joinder).  The Court went on to find that "joinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie."  *AF Holdings LLC,* 2012 WL 3204917 at *13.

Put simply, the putative defendants are not prejudiced but likely benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted material and seek redress from Defendants, who have allegedly engaged in infringing activity.   At this preliminary stage, Plaintiff has met the requirements of permissive joinder under Rule 20(a)(2), and, thus Defendants' motion to quash should be denied.

**D.    This Court Has Already Ruled That Joinder Is Proper**

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Murdoch v. Castro*, 489 F.3d 1063, 1067-68 (9th Cir. 2007) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.  *Id.*  "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'"  *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).

Here, the Court has already found that joinder is proper when ruling on

Plaintiff's Motion for Leave to Serve Third Party Subpoenas. *See* Docket No. 13, p. 6. The Court's finding was made without prejudice to Defendants' ability to raise the issue after the disclosure of the Doe Defendants' identities. *Id.* Plaintiff respectfully requests that the Court not deviate from its previous finding.

### E.   California Courts Agree That Joinder Is Proper.

All three districts in California that have adjudicated joinder in BitTorrent copyright infringement cases have held that joinder is proper. Most recently, the Northern District of California in *Third Degree Films, Inc.*, 2012 WL 3763649, held:

> This Court is also cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers pro se. However, severing the putative defendants at this early stage is no solution to ease the administrative burden of the cases. As the case progresses, the Court may conclude that it is unmanageable, depending on the number of defendants served and appearing, or that, in fact, the claims do not arise from the same transaction and occurrence. At this time, however, the Court is not persuaded that Plaintiff could not withstand a motion to dismiss for improper joinder. The Court therefore declines to sever the Doe Defendants at this time.

*See also, Berlin Media Art E.K. v. Does 1-144,* 2011 WL 4056167 (E.D. CA. 2011) (permitting discovery in joined case); *Malibu Media, LLC v. Does 1-25*, 2012 WL 2367555 at *3 (S.D.Cal. June 21, 2012); *Liberty Media Holdings, LLC*, 2011 WL 1869923 at *5; *Patrick Collins v. Does 1-2590*, 2011 WL 4407172; *New Sensations, Inc. v. Does 1-1,474*, 2011 WL 4407222, (N.D.Cal. 2011) (same); *accord Hard Drive Productions, Inc. v. Does 1–46,* 2011 U.S. Dist. LEXIS 67314 (N.D. Cal. 2011) (same); *New Sensations, Inc. v. Does 1745*, 2011 WL 2837610 (N.D. Cal. 2011) (same, and opining "Judge Howell of the D.C. Circuit has repeatedly held that [joinder is proper] in infringement actions" and "[h]is analysis makes sense.").

## IV.   A PROTECTIVE ORDER SHOULD NOT BE ISSUED

Rule 26(c) allows the Court to issue a protective order to limit discovery and

24

1  make any order which justice requires to protect a party or person from annoyance,

2  embarrassment, oppression, or undue burden or expense.  A protective order should

3  be entered only when the movant makes a particularized showing of "good cause"

4  and specific demonstration of fact by affidavit or testimony of a witness with

5  personal knowledge, of the specific harm that would result from disclosure or loss of

6  confidentiality; generalities, conclusory statements and unsupported contentions do

7  not suffice. *Gulf Oil Company v. Bernard*, 452 U.S.89, 102 n.16, 101 S. Ct. 2193, 68

8  L. Ed. 2d 693 (1981); *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124

9  F.R.D. 652, 653 (D.Nev. 1989) ("the burden is on the party seeking relief to show

10  some plainly adequate reason for the order.").

11      Plaintiff has no intention of using the Doe defendants' identities for any reason

12  other than for litigation purposes.  Indeed, the Court's Order Granting Plaintiff Leave

13  to Serve Third Party Subpoenas specifically provides that Plaintiff "may only use the

14  information disclosed for the sole purpose of protecting its rights in pursuing this

15  litigation."  [Docket no. 13, p.7, ¶ 6(B)].  Moreover, as discussed above, a "putative

16  defendant's First Amendment right to anonymity in the context of [their] BitTorrent

17  activity is minimal and outweighed by the plaintiff's need for putative defendants'

18  identifying information in order to protect its copyrights." *Donkeyball Movie, LLC v.*

19  *Does*, 810 F. Supp. 2d 20, 26 (D.D.C. 2011); *Arista Records LLC v. Does 1-19*, 551

20  F.Supp.2d 1at 8 ("First Amendment privacy interests are exceedingly small where the

21  'speech' is the infringement of copyrights").  Furthermore, "[i]nternet subscribers do

22  not have an expectation of privacy in their [identifying information] as they have

23  already conveyed such information to their Internet Service Providers."

24  *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. Kg. v. Does 1-4,577*, 736 F.

25  Supp. 2d 212 at 216.

26  **V.    CONCLUSION**

27      For all of the foregoing reasons, Plaintiff respectfully requests that the Court

28
25

1   deny Defendants' motion to quash in its entirety.

2   DATED: September 13, 2012                    KUSHNER LAW GROUP

3

4                                         By:  _____/s/ Leemore L. Kushner_____

5                                              Leemore L. Kushner

6                                              Attorneys for Plaintiff Malibu Media, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Plaintiff's Opposition to Defendants' Motion to Reconsider, Sever, and for Protective Order

## **CERTIFICATE OF SERVICE**

1
2
3      I hereby certify that I electronically filed the foregoing with the Clerk of the
4   Court using the CM/ECF system which will send notification of such filing to the
5   Electronic Service List for this Case.
6   Dated:  September 13, 2012          KUSHNER LAW GROUP
7
8
9                                    By: */s/ Leemore Kushner*_____.
10                                       Leemore Kushner
                                         Attorneys for Plaintiff MALIBU MEDIA,
11                                       LLC
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's Opposition to Defendants' Motion to Reconsider, Sever, and for Protective Order